IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| United States of America *ex rel.* Donna Rauch, Muriel Calhoun, and Brandy Knight, | ) ) ) ) | C/A No. 6:15-cv-01589-DCC |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| Oaktree Medical Centre, P.C.; Labsource, LLC; Pain Management Associates of North Carolina, P.C.; Pro Care Counseling Center, LLC; Prolab, LLC; FirstChoice Healthcare, P.C.; Medical Management and Design Consultants, LLC; Daniel McCollum, D.C.; Gary Edwards; Dean Banks, D.C.; Bert Blackwell, M.D.; Dwight Jacobus, D.O.; Daniel Sheehan, M.D.; Joe Case; and Myron Moorehead, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **OPINION AND ORDER** |
| Defendants. | ) ) ) | |

This matter comes before the Court on Motions to Dismiss filed by Defendants

Daniel A. McCollum; Robert Blackwell;[1] Gary Edwards;[2] Oaktree Medical Centre, P.C.

("Oaktree"); FirstChoice Healthcare, P.C. ("FirstChoice"); Labsource, LLC; Pain

Management Associates of North Carolina, P.C. ("PMA"); Dean Banks; Joseph Case;[3]

---

[1] Defendant Robert Blackwell is named "Bert Blackwell, M.D." in the caption of the Amended Complaint.

[2] Defendant Edwards is proceeding *pro se* in this case. Pursuant to well-established precedent, the Court construes Defendant Edwards' filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed' . . . ." (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))).

[3] Defendant Joseph Case is identified as "Joe Case" in the caption of the Amended Complaint.

1

and Daniel Sheehan.  ECF Nos. 157, 166, 170, 172, 175, 195, 241.  The Motions have been fully briefed.  ECF Nos. 184, 201, 218, 228, 235, 236, 238, 246, 248, 250, 251, 255. In light of the unique nature of the claims in this case, the Court first provides an overview of the statutory scheme underlying this case prior to addressing the merits of the Motions at bar.

## STATUTORY BACKGROUND

The False Claims Act ("FCA") provides for the award of treble damages and civil penalties for, *inter alia*, knowingly causing the submission of false or fraudulent claims for payment to the United States government.  31 U.S.C. § 3729(a)(1). The FCA provides, in pertinent part, that a person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> (C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G) [of 31 U.S.C. § 3729(a)(1)]; . . .
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990,[4] plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1) (internal footnote and citation omitted) (footnote added).  For purposes of the FCA, the terms "knowing" and "knowingly,"

> (A) mean that a person, with respect to information -- (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or

---

[4] By virtue of 28 C.F.R. § 85.3(a)(9), the penalty range has increased to a minimum of $5,500 and a maximum of $11,000 per violation. For violations occurring after November 2, 2015, the civil penalty range has been further increased to a minimum of $11,181 and a maximum of $22,363 per violation. 28 C.F.R. § 85.5.

falsity of the information; and (B) require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).  Moreover, "the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).  "Importantly, to trigger liability under the [FCA], a claim actually must have been submitted to the federal government for reimbursement, resulting in 'a call upon the government fisc.'"  *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 454 (4th Cir. 2013) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999)) (citation omitted).

A person—known as a "relator"—"may bring a civil action for a violation of [the FCA] for the person and for the United States Government."[5]  *See* 31 U.S.C. § 3730(b)(1) ("The action shall be brought in the name of the Government.").  Recognizing that relators might face retaliation for acts done in furtherance of the FCA, Congress also included an anti-retaliation provision in the statute.  *See* 31 U.S.C. § 3730(h).  This provision states that:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under [the FCA] or other efforts to stop 1 or more violations of [the anti-retaliation provision].

31 U.S.C. § 3730(h)(1).

---

[5] An FCA action initiated by a private relator is known as a *qui tam* case and is often colloquially referred to as a whistleblower case.  *United States v. Whyte*, 918 F.3d 339, 345 (4th Cir. 2019); *O'Hara v. Nika Techs., Inc.*, 878 F.3d 470, 472 (4th Cir. 2017).  However, a civil action under the FCA may also be brought directly by the Government without a relator.  *See* 31 U.S.C. § 3730(a).

To initiate a *qui tam* action under the FCA, the relator must serve a copy of the complaint along with a "written disclosure of substantially all material evidence and information the [relator] possesses" on the Government.  31 U.S.C. § 3730(b)(2).  "The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders."  *Id.*  During this 60-day period, the Government is charged with investigating the allegations and "may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal."  31 U.S.C. §§ 3730(b)(2), (3).

Before the 60-day period (or any extensions obtained) expire, the Government shall either "(A) proceed with the action, in which case the action shall be conducted by the Government; or (B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action."[6]  31 U.S.C. § 3730(b)(4).  The extent of the relator's involvement and control of the case is dependent on which of these options the Government selects.

If the Government intervenes in the case, "it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the

_____

[6] In the event the Government declines to intervene, it "may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion."  31 U.S.C. § 3730(c)(2)(A).  Until recently, the Government exercised this option sparingly; however, on January 10, 2018, the Department of Justice ("DOJ") issued a memorandum ("the Granston Memo") to all Government attorneys handling FCA cases, "directing those attorneys to seek dismissal of FCA *qui tam* actions under certain circumstances."   Serra J. Schlanger, *One Year Later: The Effect of the Granston Memo on Qui Tam Actions*, 31 No. 4 Health Law. 9, 9 (2019) (outlining the factors DOJ uses to determine whether to seek dismissal of a *qui tam* action).

action"; however, the relator "shall have the right to continue as a party to the action" subject to four statutory limitations:

1. the Government may dismiss the action over the objections of the relator as long as the relator is notified of the Government's intention to move for dismissal and the Court provides the relator with an opportunity for a hearing;

2. the Government may settle the action notwithstanding the objections of the relator "if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances";

3. the Government may impose limitations on the relator's participation in the case if it shows that "unrestricted participation during the course of the litigation by the [relator] would interfere with or unduly delay the Government's prosecution of the case, or would be repetitious, irrelevant, or for purposes of harassment"; and

4. the court may limit the relator's participation in the litigation if the defendant makes a showing that the relator's "unrestricted participation during the course of the litigation . . . would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense."

31 U.S.C. §§ 3730(c)(1), (2).

If the Government declines to "proceed with the action, the [relator] shall have the right to conduct the action." 31 U.S.C. §§ 3730(c)(3). However, the court "may

nevertheless permit the Government to intervene at a later date upon a showing of good cause." *Id.* There are, however, several well-established statutory limitations to a relator's ability to pursue non-intervened FCA actions. *See* 31 U.S.C. §§ 3730(b)(5); (e)(1)–(4). Generally, the relator must be the first person to file an FCA action based on the facts underlying the complaint. 31 U.S.C. § 3730(b)(5). Furthermore, a relator may not bring an FCA action "which is based upon allegations or transactions which are subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party." 31 U.S.C. § 3730(e)(3). Similarly, the allegations or transactions alleged in the complaint must not have been publicly disclosed: "(i) in a Federal criminal, civil, or administration hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media," unless the relator is an original source of the information. 31 U.S.C. § 3730(e)(4)(A); *see* 31 U.S.C. § 3730(A)(5) (defining "original source"). If the allegations or transactions in the complaint have been publicly disclosed, the court "shall dismiss [the] action or claim . . . unless opposed by the Government."[7] 31 U.S.C. § 3730(4)(A).

Relators who prevail in FCA actions are entitled to a "bounty" on the Government's recovery. *See* 31 U.S.C. § 3730(d). In cases where the Government intervenes in the action, the relator is generally entitled to between 15 and 25 percent "of the proceeds of the action or settlement of the claim, depending upon the extent to which the person

---

[7] There are several other limitations that are not commonly present in FCA actions. *See, e.g.,* 31 U.S.C. §§ 3730(e)(1), (2) (setting forth limitations on actions brought against members of the armed forces and various Government officials).

substantially contributed to the prosecution of the action."[8]   31 U.S.C. § 3730(d)(1). When, however, the Government does not intervene in the action, the relator is entitled to between 25 and 30 percent of the proceeds of the action or settlement.   31 U.S.C. § 3730(d)(2).  Additionally, a relator who prevails in an FCA action—regardless of whether the Government intervenes—is entitled to "reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs."  31 U.S.C. § 3730(d).   Finally, if a relator prevails on her anti-retaliation claim, she is entitled to "reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees."   31 U.S.C. § 3730(h)(2).

## PROCEDURAL HISTORY

On April 10, 2015, Donna Rauch, Muriel Calhoun, and Brandy Knight ("Plaintiff-Relators")—all former employees of Defendant Oaktree[9]—filed a sealed Complaint alleging that a large number of individual and corporate defendants violated the FCA and the FCA's anti-retaliation provision.  ECF No. 1.  For almost four years, the Government investigated Plaintiff-Relators' allegations while this case was under seal.  During that

---

[8] The relator's recovery is limited to no more than 10 percent of the proceeds when the action is based primarily on publicly disclosed information.  *See* 31 U.S.C. §§ 3730(d)(1).

[9] Plaintiff-Relator Rauch is the former Chief Operations Officer and Chief Financial Officer for Defendant Oaktree.  *Id.* at 1–2.  Plaintiff-Relator Calhoun is a former Certified Medical Assistant and Operations Manager for Defendant Oaktree.  *Id.* at 2.  Plaintiff-Relator Knight is a former Clinic Coordinator and Lead Clinic Coordinator for Defendant Oaktree. *Id.*

time, two other cases were filed against many of the same Defendants. *See United States ex rel. Mathewson v. McCollum et al.*, Case No. 6:17-cv-01190-DCC (D.S.C.); *United States ex rel. Hawkins v. Pain Management Associates of the Carolinas LLC et al.*, Case No. 8:18-cv-02952-DCC (D.S.C.) (collectively, "the related cases").

On March 1, 2019, the Government filed a Notice of Partial Intervention in each of the cases. Specifically, the Government intervened as to the following claims:

- *Rauch, Calhoun, and Knight*: Allegations that Defendants Oaktree; Labsource, LLC; PMA; Pro Care Counseling Center, LLC; ProLab, LLC; FirstChoice, and McCollum violated the Anti-Kickback Statute (the "AKS"), 42 U.S.C. § 1320a-7b, the physician self-referral law (the "Stark Law"), 42 U.S.C. § 1395nn, and the FCA, "by providing and/or receiving illegal remuneration that was tied to the referral of urine drug tests ('UDT') and billing or causing to be billed to federal health care programs claims for UDT that were not medically necessary and not performed." ECF No. 77.

- *Mathewson*: Allegations that Defendants McCollum; FirstChoice; Oaktree; and Pain Management Associates of the Carolinas, LLC, violated the Stark Law and the FCA "by providing and/or receiving illegal remuneration that was tied to the referral of UDT, by billing or causing to be billed to federal health care programs claims for UDT that were not medically necessary, and by billing or causing to be billed to federal health care programs claims for prescription medications that were not medically necessary." *Id.*

▪ *Hawkins:* Allegations that Defendant Pain Management Associates of the Carolinas, LLC violated the FCA "by billing or causing to be billed to federal health care programs medically unnecessary opioid prescriptions." *Hawkins*, Case No. 8:18-cv-02952-DCC at ECF No. 13 (D.S.C. March 1, 2019).

As a result of the Government's Notice of Partial Intervention, the Court ordered that the case be unsealed. ECF No. 78. Additionally, the Court consolidated this case and the related cases. ECF No. 79.

On May 31, 2019, the Government filed a Complaint in Intervention, which consolidated the intervened claims and outlined detailed factual allegations in support of those claims. ECF No. 86. Contemporaneously, Plaintiff-Relators undertook the process of serving their Complaint so that they could pursue the non-intervened claims. *See, e.g.,* ECF Nos. 80, 92, 114. After the Complaint was served, Defendants began filing Motions to Dismiss Plaintiff-Relators' Complaint. *See* ECF Nos. 99, 104, 110, 123, 125. In response, Plaintiff-Relators filed an Amended Complaint on August 9, 2019, which mooted all Motions pertaining to the initial Complaint. *See* ECF Nos. 124 (Amended Complaint); 202 (Text Order Denying Motions to Dismiss as Moot).

Plaintiff-Relators' Amended Complaint contains only the non-intervened claims.[10] To that end, the Amended Complaint states:

---

[10] The relators in the related cases did not serve their Complaints on the respective Defendants, which indicated that they were not pursuing any non-intervened claims. Out of an abundance of caution, the Court issued a Text Order directing the relators in the related cases to state whether they were pursuing any non-intervened claims. The relators in both related cases affirmatively stated that they were not pursuing any non-intervened claims. *See Mathewson*, Case No. 6:17-cv-01190 at ECF No. 81 (D.S.C.

In light of the United States' recently announced intervention to become a co-plaintiff in Relators' allegations against the intervened Defendants and to decline intervention in Relator's claims against Defendants Synergy Medical, LLC, Medical Management and Design Consultants, LLC, Gary Edwards, Dean Banks, Bert Blackwell, M.D., Dwight Jacobus, D.O., Daniel Sheehan, M.D., Lloyd Miller, M.D., Joe Case, and Myron Moorehead, qui tam Relators, through their attorneys, hereby amend their Complaint to assert qui tam claims only as against Defendants Medical Management and Design Consultants, LLC, Edwards, Banks, Blackwell, Jacobus, Sheehan, Miller, Case, and Moorehead. This amendment is done to distinguish the pleading of Relators' non-intervened claims from the claims in which the United States has noticed its intention to intervene. This Amended Complaint is not intended to alter Relators' claims for relief against the intervened Defendants as set forth in the Relators' original Complaint; however, Relators recognize in accordance with Sections 3730(c)(1) and 3731(c) of the FCA, which assign to the United States "primary responsibility for prosecuting [an] action" in which it intervenes and permit the United States, in exercising that responsibility to file a new complaint to state its claims as it deems best, that the United States' Complaint in Intervention now should be understood to control the substantive claims against the intervened Defendants.

ECF No. 124 at 2–3. Ten Defendants filed Motions to Dismiss the Amended Complaint, which are now pending before the Court.[11] ECF Nos. 157, 166, 170, 172, 175, 195, 241.

## LEGAL STANDARD

"Generally, a complaint will survive a Rule 12(b)(6) motion to dismiss if it 'state[s] a claim to relief that is plausible on its face,' meaning that it pleads sufficient facts to support a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, fraud-based claims—to

---

Sept. 20, 2019); *Hawkins*, Case No. 8:18-cv-02952 at ECF No. 54 (D.S.C. Sept. 24, 2019).

[11] As detailed below, Defendants Oaktree, First Choice, Labsource, and PMA filed a joint Motion to Dismiss; accordingly, there are seven pending Motions to Dismiss before the Court.

include claims made under the FCA—must satisfy the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b).  *Id.*  Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *Id.*

"To satisfy Rule 9(b), a plaintiff asserting a claim under the [FCA] 'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Nathan*, 707 F.3d at 455–56 (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)).  The Fourth Circuit has held that "allegations of a fraudulent scheme, in the absence of an assertion that a specific false claim was presented to the government for payment" are insufficient to meet Rule 9(b)'s heightened pleading standard.  *Id.* at 456.  "Instead, the critical question is whether the defendant caused a false claim to be presented to the government, because liability under the [FCA] attaches only to a claim actually presented to the government for payment, not the underlying fraudulent scheme."  *Id.* (citing *Harrison*, 176 F.3d at 785).  In the event a relator does not plead with particularity that specific false claims actually were presented to the government for payment, a relator's complaint may still survive a Rule 9(b) challenge only if it "allege[s] a pattern of conduct that would '*necessarily* have led[ ] to submission of false claims' to the government for payment."  *Grant*, 912 F.3d at 197 (quoting *Nathan*, 707 F.3d at 457) (alteration and emphasis in original).

The Fourth Circuit has acknowledged that Rule 9(b) imposes practical challenges on relators, "especially where billing practices and records are not readily ascertainable

to certain categories of employees within a company." *Grant*, 912 F.3d at 197. "However, Rule 9(b)'s particularity requirement serves as a necessary counterbalance to the gravity and 'quasi-criminal nature' of FCA liability." *Id.* (quoting *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006)). "Thus, Rule 9(b)'s purposes of providing defendants notice of their alleged misconduct, preventing frivolous suits, and eliminating fraud actions in which all the facts are learned after discovery apply with special force to FCA claims and the accompanying presentment requirement." *Id.* (citing *Nathan*, 707 F.3d at 456).

## DISCUSSION

### I.  Standing and Plaintiff-Relators' Right to Pursue Non-Intervened Claims

As an initial matter, each Motion raises the argument that Plaintiff-Relators' lack standing to pursue non-intervened claims. Defendants base this argument on a district court order from the District of Utah—*United States ex rel. Brooks v. Steven-Henager College, Inc.*, 359 F. Supp. 3d 1088 (D. Utah 2019). In *Brooks*, two relators filed an FCA action, contending that the defendants submitted false claims for federal financial aid. *Id.* at 1094. The Government filed a complaint in intervention, electing to intervene on some but not all of the relators' claims against two defendants. *Id.* Thereafter, the relators filed a second amended complaint that asserted new claims and named additional defendants. *Id.* Although the Government elected not to intervene as to the new claims, it took the position that the relators could maintain the non-intervened portion of the action in the name of the United States. *Id.* The relators amended their complaint several more times, and the defendants moved to dismiss the relators' fourth amended complaint and the Government's amended complaint in intervention. *Id.*

After the motions to dismiss were fully briefed, the *Brooks* court *sua sponte* entered an Order noting that it was "concerned with the manner in which [the] case has been litigated." *Brooks*, Case No. 2:15-cv-119-JNP-EJF at ECF No. 461 (D. Utah Aug. 2, 2018). Specifically, the court analyzed the language of the FCA and argued that the relators could not independently pursue non-intervened claims. *See id.* at 10 ("In sum, the plain language of the [FCA] provides that the Government, if it intervenes, must conduct *the action*, not certain causes of action, and that the Government has 'the primary responsibility for prosecuting the action.'" (quoting 31 U.S.C. § 3730(c)(1)) (emphasis in original)). Additionally, the court noted its concern that the FCA "potentially violates the 'take Care' clause [of] Article II of the U.S. Constitution to the extent that it allows private citizens to prosecute claims on behalf of the Government." *Id.* at 11 (citations omitted). In support of this argument, the court cited to dicta in a Supreme Court decision which expressly declined to reach the constitutional issue, a "white paper" from the Washington Legal Foundation,[12] and an appellate brief from the Tenth Circuit. *Id.* at 11. Immediately following those citations, however, the court string cited (using a "*but see*" signal) cases

---

[12] The Washington Legal Foundation ("WLF") describes itself as "a national public-interest law firm and legal policy center" whose "mission is to defend American free enterprise by litigating, educating, and advocating for a free market, a limited and accountable government, business civil liberties, and the rule of law." *Our Mission*, Washington Legal Foundation, https://www.wlf.org/about-washington-legal-foundation/. The WLF frequently publishes articles advocating for a pro-business interpretation of the FCA. *See, e.g.,* Stephen A. Wood, *A Convincing Case for Judicial Stays of Discovery in False Claims Act Qui Tam Litigation*, Washington Legal Foundation (May 5, 2017), https://www.wlf.org/2017/05/05/publishing/a-convincing-case-for-judicial-stays-of-discovery-in-false-claims-act-qui-tam-litigation/ ("While accurate data would be nearly impossible to compile, the cost of defending frivolous *qui tam* cases surely runs into the hundreds of millions of dollars annually, adding significantly to the cost of doing business with the federal government. Congress is unlikely to address this problem.").

from five Circuits—including the Tenth Circuit—rejecting the same constitutional argument. *Id.* at 11–12.

In light of these concerns, the court ordered supplemental briefing on five issues:

1. Whether a relator may file his or her own amended complaint after the Government has elected to intervene and proceed with the action.

2. Whether Relators' second, third, and fourth amended complaint have any legal effect.

3. Assuming that Relators' fourth amended complaint has legal effect, whether the court could dismiss that complaint if the defendants show that Relators' "unrestricted participation" in the action causes the defendants "undue burden or unnecessary expenses."

4. Whether the False Claims Act violates the "take Care" clause of Article II of the U.S. Constitution to the extent that it allows private citizens to prosecute actions on behalf of the Government, after the Government has declined to intervene.

5. What oversight, if any, has the Government exercised over the manner in which Relators' have prosecuted their "separate" claims?

*Id.* at 12.

After the parties briefed these issues, the *Brooks* court issued an opinion finding that "nothing in the [FCA] or the legislative history suggests that a relator can maintain the non-intervened portion of an action." *Brooks*, 359 F. Supp. 3d at 1116. To that end, the court found the FCA to be unambiguous and determined that the word "action" in the FCA means "civil action" rather than "cause of action." *Id.* at 1118. Thus, under the reasoning of *Brooks*, the Government would only have two options in an FCA case: (1) intervene as to the entire case or (2) decline to intervene as to the entire case. *See id.* The *Brooks* court attempted to distance itself from this conclusion by invoking the language of 37 U.S.C. § 3731(c), which permits the Government to file its own complaint after intervention "or amend the complaint of a person who has brought an action under

[the FCA] to clarify or add detail to the claims in which the Government is intervening and to add any additional claims with respond to which the Government contends it is entitled to relief."  This language, according to the court, "lets the Government intervene as to certain claims in the relators' complaint" and decline to intervene as to other claims.  *See Brooks*, 359 F. Supp. 3d at 1120.

The *Brooks* court then determined that relators may not maintain the non-intervened portion of an action.  *Id.* at 1120.  The court reasoned that "Congress would not have given relators the primary responsibility for prosecuting the non-intervened claims in such a cryptic fashion."  *Id.* (citation omitted).  By way of illustration, the court cited to the language of the FCA, which states the Government has the "'*primary responsibility for prosecuting the action, and shall not be bound by an act of the [relator]*.'"  *Id.* at 1121 (quoting 31 U.S.C. § 3730(c)(1) (emphasis in original)).  The court held "it is unclear how the Government is not 'bound by an act of [a relator]' if the relator can add allegations, defendants, and claims to the Government's action."  *Id.*  Finally, the court examined several other provisions of the FCA and the legislative history and found that the FCA unambiguously prohibits relators from proceeding with non-intervened claims.

Because the *Brooks* opinion has been invoked by the Defendants in each of their Motions, this Court directed the Government "to file a brief outlining its position on Relators' right to maintain independent claims after the filing of [the] United States' Notice of Partial Intervention and [the] United States' Consolidated Complaint in Intervention."  ECF No. 203.  The Government filed a brief in which it contends that *Brooks* was wrongly decided and affirmatively stating that Plaintiff-Relators have the right to maintain the non-intervened claims.  ECF No. 247.

The Court agrees with the Government that the reasoning of *Brooks* is circular and fundamentally misunderstands how an FCA case proceeds. Indeed, equating "action" with "civil action" renders several important provisions of the FCA meaningless. For example, the FCA permits the Government to dismiss or settle "the action" notwithstanding the objections of the relator. As the Government correctly notes in its response, the Government "often seeks to dismiss or settle a subset of a relator's causes of action, rather than the entirety of the complaint, and courts have permitted this approach." ECF No. 247 at 4 (citation omitted). By defining "action" to mean "civil action," the *Brooks* court would give the Government two options in a case—intervene as to all claims or decline to intervene as to any claims. The *Brooks* court tries to dispel this conclusion by invoking the language of 37 U.S.C. § 3731(c), which the court found "unambiguously lets the Government add claims when it intervenes." *Brooks*, 359 F. Supp. 3d at 1120. That misses the point, as that statute outlines what the Government may do *after* "the Government elects to intervene and proceed with an action brought under [the FCA]." 31 U.S.C. § 3731(c). The Government must choose to intervene in the "action" prior to filing its Complaint in Intervention. Under the *Brooks* court's reasoning, that necessarily means the Government must initially intervene as to the entire case or decline to intervene as to the entire case. *Brooks* acknowledges such a reading would be "troubling if it were true." *Brooks*, 359 F. Supp. 3d at 1120.

To be sure, the FCA is not a model of clarity. In *United States ex rel. Merena v. SmithKline Beecham Corp.*, Justice Alito, who was then a Circuit Court Judge, noted:

> As we have previously commented, the draftsmanship of the qui tam statute has its quirks, and one of those quirks is that the statute is based on the model of a single-claim complaint. The District Court in this case stated: It would seem almost inevitable to me that at least in most qui tam actions

there would be allegations of multiple false claims alleged in a complaint, and we are inclined to agree, but the qui tam statute is phrased as if every qui tam complaint contained only one claim. The following provisions illustrate this pattern.

The statute authorizes a qui tam plaintiff to bring a civil action for a *violation* of section 3729, but surely such a plaintiff may bring an action containing multiple claims, each of which alleges a separate violation of section 3729. When a qui tam action is filed, the government may proceed with *the action* or decline to take over *the action*, but the government often decides to take over only certain claims in a multi-claim action, and we are aware of no decision holding that is improper. The statute authorizes the government to dismiss *the action* and settle *the action*, but again, we are aware of no decision holding that the government may not settle or dismiss only some of the claims in a multi-claim complaint, and we can think of no reason why the government should be permitted to do so.

205 F.3d 97, 101–02 (3d Cir. 2000) (internal citations and quotations omitted) (emphasis in original).

After examining the FCA statute as a whole, the Court is persuaded that "action" means "cause of action" and not "civil action." Therefore, the Court declines to adopt the reasoning of the *Brooks* court, which is an outlier in a large body of FCA case law. Indeed, the Court is aware of no case law—other than *Brooks*—that holds that a relator may not litigate non-intervened claims. It is, perhaps, telling that even the defendants in *Brooks* did not advance such an argument; instead, the issue was raised by the court. While novelty is not, in and of itself, a valid reason to reject a legal argument, there is an overwhelming body of case law in this District and elsewhere that has permitted relators to pursue non-intervened claims. *See, e.g., United States v. Berkeley Heartlab, Inc.*, 225 F. Supp. 3d 487 (D.S.C. 2016) ("The Government partially intervened regarding the waiver of insurance copays and deductibles. . . . Because the Government elected not to intervene with regard to [relator's] allegations involving the payment of speaker's fees or the waiver of private insurance copays and deductibles, he has 'the right to conduct the

action.'" (quoting 31 U.S.C. § 3730(c)(3))).  The Court finds no reason to depart from this well-established interpretation of the FCA and rejects Defendants' Motions to the extent they rely on *Brooks*.

## II. Defendant McCollum's Motion to Dismiss[13] – ECF No. 157

Defendant McCollum moves to dismiss Plaintiff-Relators' Amended Complaint for three reasons: (1) Plaintiff-Relators have failed to plead that they were employed by Defendant McCollum; (2) 31 U.S.C. § 3730(h) does not recognize a cause of action against non-employers; and (3) Plaintiff-Relators may not pursue non-intervened claims after the Government intervenes.  As stated above, the Court finds that Plaintiff-Relators may pursue their non-intervened claims.  Accordingly, the Court turns to Defendant McCollum's remaining arguments.

Defendant McCollum contends that Plaintiff-Relators' retaliation claims against Defendant McCollum fail as a matter of law because Defendant McCollum was not Plaintiff-Relators' employer and 31 U.S.C. § 3730(h) does not recognize a cause of action against a non-employer.  ECF No. 157 at 3.  Plaintiff-Relators respond by arguing that the current version of the FCA does not require that the defendant in a retaliation claim be the relator's employer.  ECF No. 184.  Alternatively, Plaintiff-Relators claim that Defendant McCollum is the *alter ego* of Defendant Oaktree.  *Id.*

---

[13] Defendant McCollum has filed two Motions to Dismiss in this case.  *See* ECF No. 157, 230.  Defendant McCollum's second Motion to Dismiss is directed at Relator Karen Mathewson's Complaint in a related case.  *See United States ex rel. Mathewson v. McCollum et al.*, No. 6:17-cv-1190 (D.S.C.).  Relator Mathewson has indicated that she is not pursuing non-intervened claims.  Accordingly, Defendant McCollum's Motion to Dismiss, ECF No. 230, is DENIED AS MOOT.

Defendant McCollum states that "'[a] successful claim for retaliation under § 3730(h) requires that the [relator] establish three basic elements: (1) he engaged in protected activity by acting in furtherance of a qui tam suit; (2) his employer knew of these acts; and (3) his employer took adverse action against him as a result of these acts.'" *Id.* at 3–4 (quoting *Glynn v. EDO Corp.*, 710 F. 3d 209, 214 (4th Cir. 2013) (quotation marks omitted)). However, Defendant McCollum acknowledges, in a footnote, that the case that he quoted "addressed the pre-2009 version of § 3730(h)." *Id.* at 4 n.1. That proves to be significant in light of the amendments made in 2009. The pre-2009 version of 31 U.S.C. § 3730(h) stated:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment *by his or her employer* because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under [the FCA], including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. . . . .

False Claims Amendments Act, Pub. L. No. 99-562, 100 Stat. 3153 (1986) (emphasis added).

In 2009, the FCA was amended and now provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of [the FCA].

31 U.S.C. § 3730(h)(1). Importantly, this amendment removed the "by his or her employer" language. The Fourth Circuit has not addressed the question of whether there can be individual liability under 31 U.S.C. § 3730(h) under the current language of the

FCA.  However, district courts within the Fourth Circuit have found that individuals can be liable for retaliatory actions.  For example, in *Weihua Huang v. Rector and Visitors of University of Virginia*, the district court noted:

> For purposes of resolving the motion presently before me, the 2009 amendment is important.  Prior to the 2009 amendment, plaintiffs could only file FCA retaliation claims against their employers.  In the instant matter, that would have meant [Plaintiff's] individual-capacity claim against Defendants, and probably his official-capacity claim as well, would fail as a matter of law.  However, by eliminating the reference to "employers" as defendants in § 3730(h)(1), the 2009 amendment effectively left the universe of defendants undefined and wide-open.  Notably, the 2009 amendment applies to conduct on or after the date of enactment, which was May 20, 2009.

896 F. Supp. 2d 524, 548 n.16 (W.D. Va. 2012) (citation omitted).

Conversely, other district courts in the Fourth Circuit have held that the 2009 amendment to the FCA did not "expand the universe of individuals a corporate employee could sue for retaliation to include the plaintiff's co-workers and supervisors."  *Irving v. PAE Gov't Servs., Inc.*, 249 F. Supp. 3d 826, 831 (E.D. Va. 2017).  The *Irving* court acknowledged the importance of Congress removing "by his or her employer" from 31 U.S.C. § 3730(h), stating that "Congress simply meant to recognize the fact that agents and contractors, which were added to the class of potential plaintiffs in 2009, are not entities controlled or directed by an 'employer.'"  *Id.*  The court further pointed to the legislative history of the 2009 amendment, "which reflects that the Amendment was drafted and passed by Congress, in part, to remedy fraud and abuse arising out of the conflicts in Iraq and Afghanistan."  *Id.* at 832 (citations omitted).  Specifically, the court noted that "Congress recognized that to perform essential government functions in Iraq and Afghanistan, the federal government found it increasingly necessary to rely on the use of independent contractors, who in turn, often hired subcontractors and agents to

perform necessary government tasks." *Id.* (citation omitted). "To accommodate this reality, Congress expanded the FCA's whistleblower protections to include agents and independent contractors to ensure that all individuals in these categories who witnessed fraud against the government could bring FCA claims." *Id.* (citation omitted).

Thus, the Court is presented with an unsettled question of law in this Circuit. As another district court in this Circuit noted, however, "the overwhelming majority of courts, including the Fifth Circuit, have held that the current version of § 3730(h) does not create a cause of action against supervisors sued in their individual capacities." *Brach v. Conflict Kinetics Corp.*, 221 F. Supp. 3d 743, 748 (E.D. Va. 2016) (footnotes omitted) (citing *Howell v. Town of Ball*, 827 F.3d 515, 529–30 (5th Cir. 2016)). After reviewing the relevant authority, the Court agrees with the Fifth Circuit that, "viewing the changes § 3730(h) as a whole, it is clear that the reference to an 'employer' was deleted to account for the broadening of the class of FCA plaintiffs to include 'contractors' and 'agents,' not to provide liability for individual, non-employer defendants." *Howell*, 827 F.3d at 529–30.

"Whether a § 3730(h) claim can be brought against an individual as an alter ego of an employer corporation is less clear." *United States ex rel. Brumfield v. Narco Freedom, Inc.*, No. 12 Civ. 3674 (JGK), 2018 WL 5817379, at *3 (S.D.N.Y. 2018) (citing cases). However, as detailed below, the Court need not definitively decide whether an individual can be liable under 31 U.S.C. § 3730(h) because Plaintiff-Relators have failed to plausibly allege that Defendant McCollum was the alter ego of Defendant Oaktree. To that end, the Court turns to the allegations of Plaintiff-Relators' Amended Complaint.

The Amended Complaint alleges that Plaintiff-Relator Rauch was employed by Defendant Oaktree from approximately July 1, 2013 to January 22, 2015 as the Chief

Operations Officer and Chief Financial Officer. ECF No. 124 at 3. The Amended Complaint further alleges that Plaintiff-Relator Calhoun was employed by Defendant Oaktree from approximately October 15, 2008 to February 25, 2015 initially as a Certified Medical Assistant before being promoted to Operations Manager for Defendant Oaktree's facilities. *Id*. at 3–4. Finally, the Amended Complaint alleges that Plaintiff-Relator Knight was employed by Defendant Oaktree from approximately March 1, 2010 to February 25, 2015 initially as a Clinic Coordinator for the Anderson, Seneca, and Greenwood practice locations before being promoted to the Lead Clinic Coordinator for Defendant Oaktree's Region Two, which included the Anderson, Seneca, Greenwood, and Easley practice locations. *Id*. at 4.

Although Plaintiff-Relators' initial Complaint alleged that Defendant McCollum is the Chief Executive Officer ("CEO") of Defendants Oaktree and Labsource, the Amended Complaint is silent on Defendant McCollum's position. ECF No. 1 at 5. Rather, the Amended Complaint simply realleges and incorporates by reference Paragraphs 17–24 of the Government's Complaint in Intervention. ECF No. 124 at 5. The Court is concerned with the sparsity of allegations in Plaintiff-Relators' Amended Complaint and finds that it is generally inappropriate to incorporate allegations from the Government's Complaint in Intervention in a complaint alleging non-intervened claims. Incorporation by reference opens the door to a host of problems and invites challenges to a relator's claims, including those based on the first-to-file doctrine and the public disclosure bar.[14] A complaint

---

[14] By simply incorporating by reference significant portions of the Government's Complaint in Intervention, Plaintiff-Relators put the Court in the position of parsing the allegations in the Complaint in Intervention to determine whether the public disclosure bar or first-to-file rule apply to any of the incorporated factual allegations.

alleging non-intervened claims needs to stand alone without relying on allegations in the Government's Complaint in Intervention, particularly in a case like this case where the Government's Complaint in Intervention is the result of allegations from three separate cases and the Government's independent investigation. Indeed, Plaintiff-Relators' response to Defendant McCollum's Motion tacitly acknowledges that there are not independent allegations in the Amended Complaint sufficient to support Plaintiff-Relators' claim that Defendant McCollum is the *alter ego* of Defendants Oaktree and Labsource. *See* ECF No. 184 at 6 (relying on allegations from Plaintiff-Relators' original Complaint and the Government's Complaint in Intervention).

Accordingly, in line with the majority of courts to address the issue, the Court holds that 31 U.S.C. § 3730(h) does not allow Plaintiff-Relators to sue their supervisors in their individual capacity. Furthermore, the Court finds that Plaintiff-Relators have not plausibly alleged that Defendant McCollum is the *alter ego* of Defendant Oaktree; therefore, the Court declines to reach the question of whether Defendant McCollum can be sued as an *alter ego* of Defendant Oaktree. For those reasons, Defendant McCollum's Motion to Dismiss, ECF No. 157, is GRANTED. The Court grants Plaintiff-Relators 14 days to file a Motion to Amend setting forth legal argument about whether an individual supervisor or corporate executive can be sued as the alter ego of a corporate employer and to propose changes to the Amended Complaint that plausibly allege an *alter ego* theory of liability.

## III.    Defendant Blackwell's Motion to Dismiss – ECF No. 166

Defendant Blackwell moves to dismiss Plaintiff-Relators' Amended Complaint for four reasons:   (1) Plaintiff-Relators may not pursue non-intervened claims after the Government intervenes; (2) Plaintiff-Relators Amended Complaint does not state a claim

for relief under Federal Rules of Civil Procedure 9(b) and 12(b)(6); (3) Plaintiff-Relators' claims are prohibited by the FCA's public disclosure bar; and (4) Plaintiff-Relators' claims run afoul of the FCA's statute of limitations.  As stated above, the Court finds that Plaintiff-Relators may pursue their non-intervened claims.   Accordingly, the Court turns to Defendant Blackwell's remaining arguments.

Plaintiff-Relators have alleged that Defendant Blackwell was involved in three schemes in violation of the False Claims Act: (1) his participation in self-referrals and receipt of kickbacks and inducements in violation of the Stark Law and the AKS; (2) his participation in false and fraudulent billing practices related to the use of his National Provider Identifier ("NPI") number; and (3) his participation in the submission of claims for medically unnecessary and unreasonable UDT.  The Court has reviewed the Amended Complaint and holds that it does not plead allegations against Defendant Blackwell with the particularity required by Federal Rule of Civil Procedure 9(b).

"[T]here are two ways to adequately plead presentment under Rule 9(b)."  *Grant*, 912 F.3d at 197.  "First, a [relator] can 'allege with particularity that specific false claims actually were presented to the government for payment.'"  *Id.* (quoting *Nathan*, 707 F.3d at 457).  "This standard requires the [relator] to, 'at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  *Id.* (quoting *Wilson*, 525 F.3d at 379 (internal quotations omitted)).  "Alternatively, a [relator] can allege a pattern of conduct that would '*necessarily* have led[ ] to submission of false claims' to the government for payment."  *Id.* (quoting *Nathan*, 707 F.3d at 457).  At bottom, "Rule 9(b)'s heightened

pleading standard requires that [relators] connect the dots, even if unsupported by precise documentation, between the alleged false claims and government payment." *Id.* at 199.

Initially, the Court notes that Plaintiff-Relators' Amended Complaint is littered with paragraphs purporting to "incorporate by reference" paragraphs from the Government's Complaint in Intervention. The Court declines to consider any portions of the Government's Complaint in Intervention in ruling on Defendant Blackwell's (or any other Defendant's) Motion to Dismiss. To do so would invite disaster, given the Public disclosure, first-to-file, original source, and other limitations on FCA cases. Moreover, it would be wholly improper for the Plaintiff-Relators to incorporate information the Government obtained independently during its investigation in their non-intervened claims. FCA cases are not fishing expeditions, wherein a relator lies in wait for the Government to obtain the information required for a complaint to pass muster under Rule 9(b). It is the responsibility of the relator to compile a complaint that has the requisite particularity Rule 9(b) requires. The FCA is far too important of a tool, and the Government's resources are far too limited, to permit relators to take a shotgun approach to pleading governmental fraud. Perhaps more importantly, fraud is a serious allegation, and defendants should have a meaningful opportunity to respond to specific allegations of governmental fraud.

Considering only the allegations in the Amended Complaint, Plaintiff-Relators have not identified a single false claim that was presented to the Government for payment. Instead, they allege—in broad strokes—a series of schemes that they declare are unlawful. Rule 9(b) requires more. There is nothing in the Amended Complaint about any of the three schemes that Defendant Blackwell was allegedly involved in that leads

to the conclusion that false claims were "necessarily" presented to the Government for payment. And there are certainly no specific examples of false claims presented to the Government for payment. Put simply, Plaintiff-Relators have failed to "connect the dots" between any alleged false claims and government payments.

Plaintiff-Relators response to Defendant Blackwell's Motion is to parrot the allegations of the Government's Complaint in Intervention without any proof (or even any allegations) that Plaintiff-Relators are the original source of the information. For example, Plaintiff-Relators state that they have "alleged that between January 1, 2011 and June 5, 2013, Defendant Blackwell submitted 7,616 claims for reimbursement of UDT furnished by Defendant Oaktree to Medicare," which led to $2,489,182.39 in payments by Medicare. The Government alleged that information in its Complaint in Intervention, and Plaintiff-Relators cannot merely piggyback their claims on information disclosed by the Government in a publicly filed pleading. If Plaintiff-Relators had information about the number of claims submitted due to Defendant Blackwell's actions, that information should have been pled in the original Complaint.

In sum, Plaintiff-Relators' Amended Complaint fails to allege with particularity that Defendant Blackwell violated the FCA. The only particularized information in the Amended Complaint comes by way of incorporation of the Government's Complaint in Intervention, which the Court deems inappropriate given the posture of this case. The Court grants Plaintiff-Relators 14 days to file a Motion to Amend that demonstrates that amendment would not be futile. In the event the Plaintiff-Relators disagree with the Court's holding that it is inappropriate to incorporate allegations from the Government's

Complaint in Intervention, they may submit legal argument to that effect in the Motion to Amend.

## IV.   Defendant Edwards' Motion to Dismiss – ECF No. 170

Defendant Edwards filed a *pro se* Motion to Dismiss, which incorporates the arguments made by the other Defendants.  ECF No. 170.  Defendant Edwards specifically argues that: (1) Plaintiff-Relators have no standing to pursue non-intervened claims; (2) Plaintiff-Relators have no standing to pursue retaliation claims against Defendant Edwards; (3) Plaintiff-Relators' claims are superseded by the Government's Complaint in Intervention; and (4) Plaintiff-Relators' claims should be dismissed pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  *Id.*  In response, Plaintiff-Relators' contend that "Defendant Edwards waived his right to file a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, because he filed an Answer to the Amended Complaint on August 23, 2019, in which he did not preserve any grounds for dismissal under Rule 12(b)(1)–(7)."  ECF No. 201 at 1 (citing ECF No. 160).

According to the filings in this case, Defendant Edwards was served with the Plaintiff-Relators' original Complaint on June 8, 2019 and given an extension of time to answer until July 20, 2019.  ECF No. 228 at 1.  On July 19, 2019, Defendant Edwards filed a *pro se* Answer invoking his Fifth Amendment rights and denying all allegations except that he is a citizen of the United States and a resident of the State of South Carolina.  ECF No. 100.  On August 9, 2019, Plaintiff-Relators filed an Amended Complaint, which was mailed to Defendant Edwards on August 12, 2019.  ECF Nos. 124, 126.  On August 23, 2019, Defendant Edwards filed an Answer to the Amended Complaint, in which he again invoked his Fifth Amendment rights and denied all

allegations except that he is a citizen of the United States and a resident of the State of South Carolina. ECF No. 160. Thereafter, on September 3, 2019, he filed a Motion to Dismiss, which is presently before the Court. ECF No. 170.

Defendant Edwards' Motion incorporates the arguments made by Defendants in their initial Motions to Dismiss, which have all been denied as moot in light of the Amended Complaint. However, construing the *pro se* Motion liberally—as the Court must—it appears that Defendant Edwards' Motion was directed at the Amended Complaint, which he had already answered. As Plaintiff-Relators' note in their response, by filing an Answer to the Amended Complaint, Defendant Edwards waived the right to file a Motion to Dismiss. Fed. R. Civ. P. 12(b). However, a defendant may raise the lack of subject matter jurisdiction at any time. Fed. R. Civ. P. 12(h)(3). Construing Defendant Edwards' Motion liberally, he argues that the Court lacks jurisdiction over Plaintiff-Relators' non-intervened FCA claims and retaliation claim. As set forth above, the Court holds that Plaintiff-Relators' have standing to pursue non-intervened claims. Similarly, the Court holds that Plaintiff-Relators have standing to pursue their retaliation claims. Because Defendant Edwards' Motion was untimely, the Court need not reach the other issues it raises.[15] Accordingly, Defendant Edwards' Motion is DENIED.

## V. Defendants Oaktree, FirstChoice, Labsource, and PMA's Motion to Dismiss – ECF No. 172

Defendants Oaktree, FirstChoice, Labsource, and PMA move to dismiss Plaintiff-Relators' Amended Complaint, contending that Plaintiff-Relators' claims are superseded by the Government's Complaint in Intervention and that Plaintiff-Relators' retaliation

---

[15] The Court makes no finding as to the sufficiency of Plaintiff-Relators' allegations against Defendant Edwards as that issue is not presently before the Court.

claims are ill-pled. As stated above, the Court holds that Plaintiff-Relators' may pursue their non-intervened claims. Accordingly, the Court limits its discussion to Plaintiff-Relators' retaliation claims.

Plaintiff-Relators' Seventh Cause of Action alleges that Defendants Oaktree, McCollum, and Edwards engaged in unlawful retaliation in violation of 31 U.S.C. § 3730(h). Therefore, for purposes of this Motion, Defendant Oaktree is the only moving party. To that end, Defendant Oaktree contends that Plaintiff-Relators fail to include the requisite allegations that Relator Rauch's conduct was in furtherance of or related to an FCA claim, as compared to the mere completion of her general duties with Oaktree, and fail to specify any protected activity in which Relators Calhoun and Knight were involved. ECF No. 172 at 7–8. Additionally, Defendant Oaktree contends that Plaintiff-Relators "have failed to allege that Oaktree knew they were engaged in protected activity." *Id.* at 9.

Plaintiff-Relators' Amended Complaint states, "[t]hroughout her employment with Defendant Oaktree, Plaintiff-Relator Rauch repeatedly opposed the unlawful conduct described above, and she consistently engaged in substantial efforts to stop Defendants from continuing to violate the False Claims Act." ECF No. 124 at 31. To that end, the Amended Complaint alleges that Defendant McCollum: (1) dismissed Plaintiff-Relator Rauch from a meeting where she voiced objections about the legality of kickbacks; (2) publicly reprimanded Plaintiff-Relator Rauch "in front of everyone at a managers' meeting at Defendant Labsource"; and (3) was "involved in making the decision to terminate the employment of all three Plaintiff-Relators." ECF No. 124 at 31–33. The Amended Complaint further outlines Plaintiff-Relator Rauch's significant efforts to stop Defendant

Oaktree from committing alleged violations of the FCA. *See, e.g., id.* at 32 (outlining a number of concerns Plaintiff-Relator Rauch raised to Defendant Oaktree). However, the Amended Complaint does not set forth any protected activity that Relators Calhoun and Knight engaged in. Instead, the Amended Complaint simply alleges that "Plaintiff-Relators Calhoun and Knight had developed a close relationship with Plaintiff-Relator Rauch during their employment together at Defendant Oaktree," and "[a]fter Plaintiff-Relator Rauch's termination, Defendant Oaktree suspected that Plaintiff-Relators Calhoun and Knight were assisting Plaintiff-Relator Rauch in her efforts to stop Defendants from continuing to violate the False Claims Act." *Id.* at 33. The Amended Complaint does not set forth any plausible allegations that Plaintiff-Relators Calhoun or Knight took any actions to stop any violations of the FCA.

Accordingly, the Court finds that Plaintiff-Relator Rauch plausibly alleged that she was engaged in protected conduct. Furthermore, the Amended Complaint alleges that Plaintiff-Relator Rauch complained about Defendant Oaktree's allegedly unlawful conduct on numerous occasions. *See* ECF No. 124 at 31–33. However, the Amended Complaint is bereft of any plausible allegations that Plaintiff-Relators Calhoun or Knight were engaged in protected activity or that Defendant Oaktree knew that they were engaged in protected activity. Accordingly, Defendant Oaktree's Motion is GRANTED IN PART and DENIED IN PART. The Court grants Plaintiff-Relators Calhoun and Knight 14 days to amend to allege plausible claims for violation of 31 U.S.C. § 3730(h).

## VI. Defendant Banks' Motion to Dismiss – ECF No. 175

Defendant Banks moves to dismiss Plaintiff-Relators' Second, Fourth, and Sixth Causes of Action. Defendant Banks also adopts the arguments of other Defendants that:

(1) Plaintiff-Relators lack standing to pursue their non-intervened claims; (2) Plaintiff-Relators' claims are superseded by the Government's Complaint in Intervention; (3) Plaintiff-Relators' Amended Complaint does not meet the requirements of Federal Rules of Civil Procedure 9(b) and 12(b)(6); (4) Plaintiff-Relators' claims are prohibited by the public disclosure bar as they have not plausibly alleged that they are an "original source"; and (5) Plaintiff-Relators' claims are barred by the statute of limitations because the Amended Complaint does not relate back to the date the original Complaint was filed. As detailed above, the Court finds that Plaintiff-Relators have standing to pursue their non-intervened claim. For the reasons set forth below, the Court finds that Plaintiff-Relators' claims do not satisfy Rule 9(b)'s particularity requirement; accordingly, the Court need not reach Defendant's remaining arguments.

### A. Plaintiff-Relators' Second Cause of Action

Plaintiff-Relators' Second Cause of Action alleges that "Defendant Banks knowingly provided compensation from Defendant FirstChoice to its physician[s] and physician assistants that was directly based on the volume and value of UDT referrals and other business generated" and then submitted or caused to be submitted claims to Medicare for UDT that resulted from those referrals. ECF No. 124 at 22. The Amended Complaint additionally alleges that "Defendant Banks entered into one or more conspiracies to present or cause to be presented false or fraudulent claims for payment or approval to the Medicare program—and/or made, used, and caused to be made or used false records or statements in support of those claims—for UDT furnished by Defendants Oaktree and Labsource that [were] referred by FirstChoice physicians in violation of the Stark Law and AKS." *Id.*

Despite the broad nature of these allegations, the Amended Complaint is devoid of any supporting factual allegations. While the Amended Complaint contains several pages of allegations related to this scheme, Plaintiff-Relators fail to identify the submission of a single false claim and the allegations do not lead to the conclusion that false claims were necessarily presented to the Government for payment. Instead, Plaintiff-Relators allege that Defendant Banks created compensation agreements that generated money for healthcare providers, in part, as a result of gross collections for ancillary services. But Plaintiff-Relators fail to connect the dots between this activity and the presentment of false claims to the Government for payment. Therefore, Plaintiff-Relators' claims fail to meet Rule 9(b)'s particularity standard.

## B. Plaintiff-Relators' Fourth Cause of Action

Plaintiff-Relators' Fourth Cause of Action alleges, "[i]n 2015, Defendant Banks and Edwards knowingly instructed and/or caused to be presented materially false and fraudulent claims for payment or approval to the Medicare, Medicaid, and TRICARE programs for medically unnecessary and unreasonable UDT based upon the retroactive creation of Certificates of Medical Necessity." ECF No. 124 at 26–27. Despite the sweeping nature of this allegation, Plaintiff-Relators' Amended Complaint is devoid of any particularized information about the alleged false representations and fails to identify a single false claim submitted to the Government for payment or a scheme that necessarily resulted in the submission of false claims to the Government. Therefore, Plaintiff-Relators' claims fail to meet Rule 9(b)'s particularity standard.

## C. Plaintiff-Relators' Sixth Cause of Action

Plaintiff-Relators' Sixth Cause of Action alleges that Defendant Banks "knowingly presented and/or caused to be presented materially false and fraudulent claims for approval by Medicare and Medicaid for payment to Defendant Oaktree even though Defendant Oaktree had outsourced the lab testing" to two outside reference labs— Premier Health and Select Labs. *Id.* at 30–31. However, the factual allegations relating to this scheme only discuss Defendant Edwards and make no mention of Defendant Banks. *See id.* at 18–19. Thus, not only do Plaintiff-Relators' allegations fail to meet the particularity requirement of Rule 9(b), they fail to meet the basic pleading standard of Rule 8.

As set forth above, Plaintiff-Relators' Amended Complaint fails to allege with particularity that Defendant Banks violated the FCA. Accordingly, Defendant Banks' Motion to Dismiss is GRANTED. The Court finds that amendment would be futile, as the original Complaint was filed more than four years ago and Plaintiff-Relators have had ample opportunity to prepare a pleading that meets Rule 9(b)'s particularity requirement.

## VII. Defendant Case's Motion to Dismiss – ECF No. 195

Defendant Case moves to dismiss Plaintiff-Relators' Amended Complaint because: (1) Plaintiff-Relators failed to plead their allegations with the requisite particularity required by Federal Rule of Civil Procedure 9(b); (2) Plaintiff-Relators failed to identify a single example of a false statement or claim; (3) Plaintiff-Relators failed to adequately allege scienter; and (4) Plaintiff-Relators failed to adequately allege that the purported violations by Defendant Case were material to the Government's decision to pay a claim. Defendant Case also adopts the arguments of other Defendants that: (1) Plaintiff-Relators lack standing to pursue their non-intervened claims; (2) Plaintiff-

Relators' claims are superseded by the Government's Complaint in Intervention; (3) Plaintiff-Relators' Amended Complaint does not meet the requirements of Federal Rules of Civil Procedure 9(b) and 12(b)(6); (4) Plaintiff-Relators' claims are prohibited by the public disclosure bar as they have not plausibly alleged that they are an "original source"; and (5) Plaintiff-Relators' claims are barred by the statute of limitations because the Amended Complaint does not relate back to the date the original Complaint was filed. As detailed above, the Court finds that Plaintiff-Relators have standing to pursue their non-intervened claim. For the reasons set forth below, the Court finds that Plaintiff-Relators' claims do not satisfy Rule 9(b)'s particularity requirement; accordingly, the Court need not reach Defendant's remaining arguments.

Defendant Case is named in only the Third Cause of Action, which alleges violations of the AKS. The Amended Complaint alleges that Defendant Case was the President of Sales for Defendant Labsource. ECF No. 124 at 7. The Amended Complaint alleges that Defendant Case directed Defendant Labsource to offer financial inducements, such as free Point of Care Testing ("POCT") urine collection cups, to healthcare providers in order to induce the providers to refer urine toxicology tests to Defendants Labsource and Oaktree. *Id.* at 12. "These POCT cups had a typical retail value of $3–$6 per cup, but the [healthcare provider] could bill private or governmental insurers several hundred dollars per sample for the instant-read tests." *Id.* The Amended Complaint also alleges that Defendant Case directed Defendant Labsource to routinely waive patient financial responsibility for privately insured patients to induce healthcare providers to refer urine specimens to Defendant Labsource. *Id*. at 13. The Amended Complaint then outlines various examples of healthcare providers that used this direct

billing program. *Id.*at 12–14. Finally, the Amended Complaint states "[a]s a direct and proximate result of Defendant Oaktree's and Labsource's provision of unlawful remuneration and inducement to [healthcare providers] and beneficiaries at the direction of Defendants Case and/or Edwards, governmental payors paid millions of dollars to Defendants Oaktree and Labsource and for which Defendants Case and/or Edwards profited either directly or indirectly." *Id.* at 14–15.

While the Amended Complaint does outline the parameters of a direct billing program that Defendant Case sold to various healthcare providers, Plaintiff-Relators have not met the high burden of alleging with particularity that this scheme led to the submission of false claims to the Government. *See* Fed. R. Civ. P. 9(b). The Amended Complaint does not identify a specific example of a false claim that was submitted to the Government; therefore, to survive a motion to dismiss, Plaintiff-Relators' Amended Complaint must "allege a pattern of conduct that would '*necessarily* have led[ ] to submission of false claims' to the government for payment." *Grant*, 912 F.3d at 197 (quoting *Nathan*, 707 F.3d at 457). The Court concludes that the Amended Complaint "fails to allege how . . . the bills for these fraudulent services were presented to the government and how . . . the government paid [Defendants] for the services." *See id.* at 198. "Merely alleging fraudulent conduct and an umbrella payment, without more, is insufficient particularity" where the Defendant is not the party directly submitting the claims to the Government. *See id.* The kickback scheme alleged by Plaintiff-Relators certainly *could* have resulted in the presentment of false claims to the Government, but the Amended Complaint falls short of alleging a scheme that necessarily resulted in the submission of false claims to the Government. Accordingly, Defendant Case's Motion to

Dismiss, ECF No. 195, is GRANTED.  The Court finds that amendment would be futile, as the original Complaint was filed more than four years ago and Plaintiff-Relators have had ample opportunity to prepare a pleading that meets Rule 9(b)'s particularity requirement.

**VIII.    Defendant Sheehan's Motion to Dismiss – ECF No. 241**

Defendant Sheehan moves to dismiss Plaintiff-Relators' Amended Complaint because: (1) Plaintiff-Relators lack standing to pursue their non-intervened claims; (2) Plaintiff-Relators have failed to allege facts sufficient to state a claim for relief against Defendant Sheehan; and (3) Plaintiff-Relators have failed to allege their claims with the particularity required under Federal Rule of Civil Procedure 9(b).  As stated above, the Court holds that Plaintiff-Relators have standing to pursue their non-intervened claims.  Accordingly, the Court turns to Defendant Sheehan's arguments that Plaintiff-Relators' First and Fourth Causes of Action fail to allege facts with the particularity required by Rule 9(b) to state a claim for relief against Defendant Sheehan.

### A.  First Cause of Action

Defendant Sheehan claims that Plaintiff-Relators' First Cause of Action fails to allege facts with particularity that would establish that Defendant Sheehan knew his lab referrals caused the submission of false claims.  Plaintiff-Relators' Amended Complaint alleges that Defendant Sheehan "knew, or reasonably should have known, that [his] acceptance and expectation of remuneration in exchange for [his] orders of [designated health services] was in violation of the Stark Law and the Anti-Kickback Statute."  ECF No. 124 at 11.  However, as set forth above, Plaintiff-Relators failed to allege that a single claim was presented to the Government for payment as a resulted of the broad scheme

outlined by Plaintiff-Relators. Nor do Plaintiff-Relators provide factual allegations that lead to the conclusion that payments from the Government necessarily resulted from the conduct outlined in the Amended Complaint. In light of this, the Court concludes that there are not sufficiently particularized allegations that Defendant Sheehan, as a mere participant in the schemes, violated the FCA.

## B. Fourth Cause of Action

Defendant Sheehan also contends that Plaintiff-Relators' Fourth Cause of Action fails to allege facts with particularity that would establish that Defendant Sheehan caused the presentment of claims for medically unnecessary UDTs and that he knew such claims were false. As set forth above, Plaintiff-Relators failed to allege that a single claim was presented to the Government for payment as a resulted of the broad scheme outlined by Plaintiff-Relators. Nor do Plaintiff-Relators provide factual allegations that lead to the conclusion that payments from the Government necessarily resulted from the conduct outlined in the Amended Complaint. In light of this, the Court concludes that there are not sufficiently particularized allegations that Defendant Sheehan, as a mere participant in the schemes, violated the FCA.

Accordingly, Defendant Sheehan's Motion to Dismiss, ECF No. 241, is GRANTED. The Court finds that amendment would be futile, as the original Complaint was filed more than four years ago and Plaintiff-Relators have had ample opportunity to prepare a pleading that meets Rule 9(b)'s particularity requirement.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court rules as follows:

- Defendant McCollum's Motion to Dismiss, ECF No. 157, is GRANTED;

- Defendant Blackwell's Motion to Dismiss, ECF No. 166, is GRANTED;

- Defendant Edwards' Motion to Dismiss, ECF No. 170 is DENIED;

- Defendants Oaktree, FirstChoice, Labsource, and PMA's Motion to Dismiss, ECF No. 172, is GRANTED IN PART and DENIED IN PART;

- Defendant Banks' Motion to Dismiss, ECF No. 175 is GRANTED;

- Defendant Case's Motion to Dismiss, ECF No. 195, is GRANTED;

- Defendant McCollum's Motion to Dismiss, ECF No. 230, is DENIED AS MOOT;

- Defendant Sheehan's Motion to Dismiss, ECF No. 241, is GRANTED;

IT IS SO ORDERED.

s/Donald C. Coggins, Jr.
United States District Judge

March 5, 2020
Spartanburg, South Carolina